**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHRISTOPHER PROVAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BODUM USA, INC.,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Christopher Provan ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant Bodum USA, Inc. ("Bodum"). Plaintiff alleges the following on personal knowledge as to Plaintiff and Plaintiff's own acts, and on information and belief, including counsel's investigation and review of public records, as to all other matters.

## I. NATURE OF THE ACTION

1. This action concerns about 5.9 million Bodum French press coffee makers with replaceable glass carafes that Bodum sold in the United States from 1974 through October 2026 and, with the U.S. Consumer Product Safety Commission ("CPSC"), recalled on October 29, 2026 (the "Recalled Presses").[1]

2. The carafe of a Recalled Press can break without warning while it holds near-boiling water. Breakage can occur if the carafe is damaged or cracked, including by stirring the

[1] U.S. Consumer Prod. Safety Comm'n, *Bodum USA Recalls 5.9 Million French Press Coffee Makers with Replaceable Glass Carafes Due to Risk of Serious Burn Injury* (Oct. 29, 2026), https://www.cpsc.gov/Recalls/2027/Bodum-USA-Recalls-5-9-Million-French-Press-Coffee-Makers-with-Replaceable-Glass-Carafes-Due-to-Risk-of-Serious-Burn-Injury (last visited November 3, 2026). [hereinafter *CPSC Recall Notice*].

coffee with a metal spoon, and it poses a risk of serious burns.[2] Bodum has received dozens of reports of carafes breaking during use, most involving burns. [3]

3. Bodum knew that ordinary metal utensils can scratch or chip its carafes and that a damaged carafe can fracture. On information and belief, Bodum did not disclose that risk on its packaging or in its product listings, where it instead described the carafes as durable and heat-resistant.

4. The recall does not repair the Recalled Presses, replace the carafes, or refund any money. Bodum offers a plastic stirring spoon and a warning label. An owner who stirred with a metal spoon before the recall keeps a carafe that, by Bodum's own description of the hazard, may already be damaged and may break. Bodum offers that owner no way to check the carafe and no replacement.

5. Plaintiff and the members of the Class paid for French presses that were safe for their ordinary use. They received presses with an undisclosed safety defect that were worth less than the price paid. That injury occurred at purchase, and the recall did not cure it. Plaintiff seeks damages, restitution, declaratory relief, and an injunction requiring Bodum to provide an adequate remedy.

## II. PARTIES

6. Plaintiff Christopher Provan is a citizen of the state of New York.

7. Defendant Bodum USA, Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 45 E 20th Street, New York, New York. The CPSC identifies Bodum as a company based in New York, New York.[4]

---

[2] *CPSC Recall Notice*.
[3] *CPSC Recall Notice*.
[4] *CPSC Recall Notice*.

8. Bodum imports, markets, distributes, warrants, and sells Bodum-branded French presses in the United States, including the Recalled Presses, which were manufactured in Portugal and Thailand. Bodum announced the recall with the CPSC and administers the recall remedy. Bodum describes itself as the North American market leader in this product category.[5]

## III. JURISDICTION

9. The Court has subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). The proposed Class has more than 100 members. The amount in controversy exceeds $5,000,000, exclusive of interest and costs; Bodum sold about 5.9 million Recalled Presses at retail prices of about $15 to $65. At least one Class member is a citizen of a State different from Bodum.

10. Bodum sold the Recalled Presses nationwide, through national retailers and online, and on information and belief fewer than one-third of Class members are citizens of New York.

11. The Court has supplemental jurisdiction over any claim outside its original jurisdiction under 28 U.S.C. § 1367(a), because every claim forms part of the same case or controversy.

## IV. VENUE

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Bodum resides here. Its principal place of business is in Manhattan, and it is subject to personal jurisdiction in this District. *See* 28 U.S.C. § 1391(c)(2).

[5] Press Release, Bodum, *Statement from Bodum on the Voluntary Recall of Certain Bodum 8- and 12- Cup French Press Coffee Makers Issued on October 29 in the U.S.*, PR Newswire (Oct. 29, 2026), https://www.prnewswire.com/news-releases/statement-from-bodum-on-the-voluntary-recall-of-certain-bodum-8--and-12--cup-french-press-coffee-makers-issued-on-october-29-in-the-us-302923766.html (last visited November 3, 2026) [hereinafter *Bodum Recall Statement*].

13. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District. On information and belief, Bodum directed the marketing, distribution, warranty, and recall of the Recalled Presses from its New York headquarters, and it issued its recall statement from New York.[6]

## V. PERSONAL JURISDICTION

14. The Court has general personal jurisdiction over Bodum because its principal place of business is in New York, where it is at home.

15. The Court also has specific personal jurisdiction over Bodum under N.Y. C.P.L.R. 302(a)(1) and the Due Process Clause. Plaintiff's claims arise from and relate to Bodum's New York conduct. On information and belief, Bodum sold and shipped Recalled Presses into New York through Bodum.com and through national retailers, including Target and Walmart; marketed the Recalled Presses to New York consumers; extended its written warranty to New York purchasers; derived substantial revenue from New York sales; and is administering the recall, including distributing the recall remedy, to New York consumers. Plaintiff bought and used a Recalled Press in New York and suffered economic injury here.

## VI. FACTUAL ALLEGATIONS

### A. The Recalled Presses

16. A French press brews coffee by steeping coarse grounds in hot water inside a carafe. After several minutes, the user pushes a plunger-mounted mesh filter down through the liquid to separate the grounds and then pours the coffee from the carafe.

17. The Recalled Presses are Bodum's 8-cup and 12-cup Bistro, Brazil, Caffettiera, Chambord, Crema, Java, Jesper, and Kenya models with replaceable glass carafes. The Bodum

---

[6] *Id.*

name appears on the frame and inner lid of most models and is engraved, together with product warnings, on the carafe.[7]

18. Bodum sold the Recalled Presses at Target, Walmart, and coffee and home goods stores nationwide, and online through Bodum.com, Amazon.com, Target.com, Walmart.com, and other retailers, from 1974 through October 2026, for about $15 to $65. [8]

19. Bodum's product copy recommends brewing with hot water.[9] The carafe holds water at or near that temperature during brewing, plunging, and pouring.

20. On information and belief, the filter assembly of each Recalled Press uses a metal coil wrapped in metal mesh that presses against the inside of the carafe. In earlier litigation over a Bodum Brazil press, the court noted Bodum's point that, by design, "the metal mesh touches the glass walls of the carafe at all times."[10]

**B. The Defect**

21. The Recalled Presses share a common defect (the "Defect"). Their glass carafes, which hold near-boiling water in normal use, are vulnerable to scratches, chips, and other damage from ordinary contact with metal, including metal spoons used to stir the coffee and, on information and belief, the presses' own metal filter assemblies. Once damaged, a carafe can crack or break without warning during use and release scalding liquid. The recall notice, described below, confirms the Defect.

---

[7] *CPSC Recall Notice*.

[8] *CPSC Recall Notice*.

[9] *Bodum Chambord French Press Coffee Maker*, Walmart.com, https://www.walmart.com/ip/860791728 (last visited November 3, 2026)

[10] *Norman v. Bodum USA, Inc.*, No. SA-19-CV-00494-XR, slip op. at 17–18 (W.D. Tex. June 4, 2021), ECF No. 65, *rev'd*, No. 21-50542 (5th Cir. Aug. 9, 2022), https://cases.justia.com/federal/district-courts/texas/txwdce/5:2019cv00494/1026888/65/0.pdf.

22. Stirring is part of ordinary French press use. Bodum's own instructions tell users to stir the brew after adding the water.[11] Metal spoons are a common household utensil, and stirring coffee with one is a foreseeable use of the product.

23. On information and belief, damage that weakens a glass carafe is not always visible to an ordinary consumer, so a consumer cannot reliably tell whether a carafe is damaged before it fails.

24. Feasible, safer designs were available, such as French presses that do not use glass carafes.

**C. Bodum's Knowledge of the Defect**

25. Bodum knew of the Defect for years before the recall.

26. In *Norman v. Bodum USA, Inc.*, a personal-injury action filed in 2019 after a Bodum Brazil carafe fractured and burned a five-year-old child, Bodum's chief executive testified that Bodum recommends that consumers "use plastic or wooden tool[s] rather than metallic" to prevent scratching that could lead to fracture.[12] In the same case, Bodum acknowledged that the metal mesh of its filter assembly contacts the glass at all times. In 2022, the Fifth Circuit reversed a grant of summary judgment for Bodum and remanded the case.

27. In *Mehle v. Bodum USA, Inc.*, filed in this District, a consumer alleged that the glass carafe of her Bodum Java press cracked while she pushed the plunger and that the spilled coffee

---

[11] Bodum, *French Press Coffee Makers: Instructions for Use* (n.d.), https://m.media-amazon.com/images/I/81xl3nMFw4L.pdf (last visited November 3, 2026)(instructions for Chambord 51-ounce model, as posted on Amazon.com) [hereinafter *Bodum Instructions*].

[12] *Norman v. Bodum USA, Inc.*, No. 21-50542, slip op. at 4 (5th Cir. Aug. 9, 2022), https://www.ca5.uscourts.gov/Opinions/pub/21/21-50542-CV0.pdf

caused first- and second-degree burns. In September 2025, the court denied Bodum's motion for summary judgment, finding that conflicting expert testimony presented questions for a jury.[13]

28. In January 2014, Bodum recalled about 28,000 rose gold Chambord glass French presses sold at Starbucks because the carafe could fall out of the frame and base and break or shatter, posing laceration and burn hazards. Bodum had received about 14 reports of carafes breaking or shattering.[14]

29. Bodum identified the breakage and burn reports disclosed in the recall before it announced the recall. On information and belief, Bodum also received consumer complaints, warranty inquiries, and orders for replacement carafes over many years that informed it of carafes breaking during use. Bodum sells replacement glass carafes for its presses.[15]

## VII. <u>DEFENDANT'S REPRESENTATIONS AND OMISSIONS</u>

### A. Product-Specific Representations

30. Bodum markets the Recalled Presses' carafes as durable and heat-resistant. On information and belief, Bodum wrote or supplied the product descriptions that appear on its authorized retailers' websites. For example, on Walmart.com, a Chambord 34-ounce listing states: "Durable Materials: Carafe made of non-stain, heat-resistant borosilicate glass."[16]

---

[13] *Mehle v. Bodum USA, Inc.*, No. 24-cv-2740 at 30 (Sep. 25, 2025 S.D.N.Y.).

[14] U.S. Consumer Prod. Safety Comm'n, *Bodum USA Recalls Coffee Presses Sold Exclusively at Starbucks* (Jan. 28, 2014), https://www.cpsc.gov/Recalls/2014/Bodum-USA-Recalls-Coffee-Presses-Sold-Exclusively-at-Starbucks (last visited November 3, 2026).

[15] *Bodum French Press Replacement Glass*, Seattle Coffee Gear, https://www.seattlecoffeegear.com/products/bodum-replacement-glass-for-french-press (last visited November 3, 2026) (listing replacement carafes from $14.95 to $24.95).

[16] *Bodum Chambord French Press Coffee Maker, 34 Ounce, Chrome*, Walmart.com, https://www.walmart.com/ip/Bodum-Chambord-French-Press-Coffee-Maker-34-Ounce-Chrome/51823474 (last visited November 3, 2026).

31. In its recall statement, Bodum says it takes pride in using high-quality materials and in "ensuring our products meet or exceed all relevant safety standards."[17]

32. The product-specific statements describe the carafe as durable and as resistant to heat and temperature change. A reasonable consumer would read those statements to mean that the carafe would withstand ordinary use, including stirring, plunging, and pouring hot liquid, without breaking unexpectedly. Because of the Defect, it would not.

33. Even if accurate about the glass's composition, Bodum's statements were half-truths. Having chosen to tout the carafe's durability and heat resistance, Bodum had to disclose the facts that qualified those claims.

**B. Omissions**

34. On information and belief, Bodum did not disclose on its packaging, on Bodum.com, or in the retailer listings it supplied that:

(a) the carafe can crack or break unexpectedly during ordinary use, releasing scalding liquid and causing serious burns;

(b) ordinary metal utensils, including metal spoons used to stir coffee, can damage the carafe in a way that leads to breakage;

(c) the press's own metal filter assembly contacts the glass during every use;

(d) damage that weakens the carafe may not be visible to the consumer; and

(e) Bodum had received reports of carafes breaking during use and causing burns.

35. Bodum had exclusive and superior knowledge of these facts, and consumers could not reasonably discover them before purchase. The only caution about metal spoons appeared, on information and belief, in an instruction leaflet packed inside the box.

---

[17] *Bodum Recall Statement*

36. The omitted facts were material. A reasonable consumer would want to know before buying a coffee maker that its carafe could break during ordinary use and cause serious burns, and that a common utensil could set up that failure.

## VIII. THE RECALL AND INADEQUATE RECALL REMEDY

### A. The Recall

37. On October 29, 2026, Bodum and the CPSC announced a voluntary recall of the Recalled Presses, CPSC Recall No. 27-055, covering about 5.9 million units.[18]

38. The recall notice states that the carafe can break unexpectedly during use if it is damaged or cracked, including from stirring the coffee with a metal spoon, and that breakage poses a risk of serious burns. Bodum has identified 70 reports of carafes breaking during use, including 48 reports of burns.

39. The notice tells consumers to stop using metal spoons or utensils to stir coffee in the glass carafe immediately and to contact Bodum for a plastic Bodum stirring spoon and a warning label. The label reminds consumers not to use cracked or damaged carafes and not to stir with metal spoons. The CPSC lists the remedy as "Repair."

40. The recall does not tell consumers to stop using the Recalled Presses. It offers no refund, no replacement carafe, and no replacement press.

41. Consumers request the remedy through a recall website administered for Bodum, by email to a Sedgwick address, or by telephone.

42. Bodum stated that it will sell the Recalled Presses going forward with the plastic stirring spoon and an additional warning label.[19]

---

[18] *CPSC Recall Notice*.
[19] *Bodum Recall Statement*,

**B. Why the Remedy Is Inadequate**

43. Nothing is repaired. The remedy leaves every Recalled Press physically unchanged, with the same carafe, the same filter assembly, and the same Defect.

44. The remedy does nothing for carafes that are already damaged. The recall warns that a damaged or cracked carafe can break unexpectedly and tells owners not to use one. On information and belief, many owners stirred with metal utensils before the recall, because nothing on the packaging or in the product listings told them not to. Bodum offers those owners no inspection method, no replacement carafe, and no refund. They must guess whether the carafe is safe or buy a replacement at their own expense. Replacement Bodum carafes retail for about $15 to $25.[20]

45. The remedy does not address the filter assembly. On information and belief, the metal mesh contacts the glass during use, and the recall leaves that design unchanged.

46. The remedy shifts the risk to consumers. It depends entirely on owners changing how they use the product, and it repeats a caution that already appeared in Bodum's instructions for use. That caution did not prevent the breakages and burns identified in the recall.

47. The remedy compensates no one. It does not refund the overpayment that each purchaser suffered at the time of sale, does not reimburse owners who already bought replacement carafes or presses, and does not compensate owners for their time or expense.

48. The remedy reaches only owners who learn of the recall and contact Bodum. Bodum sold the Recalled Presses for 52 years through many retailers. On information and belief,

---

[20] *Bodum French Press Replacement Glass*, Seattle Coffee Gear, https://www.seattlecoffeegear.com/products/bodum-replacement-glass-for-french-press (last visited November 3, 2026) (listing replacement carafes from $14.95 to $24.95).

many were bought with cash, given as gifts, or resold secondhand, and Bodum lacks contact information for most owners.

49. The recall does not correct Bodum's earlier statements about the carafe's durability. Bodum's recall statement instead reaffirms the quality and safety of its products and minimizes the hazard.

50. Bodum knows how to offer a meaningful remedy. When it recalled glass Chambord presses for carafe breakage in 2014, it offered a full refund.[21]

51. The recall did not restore the value that Plaintiff and Class members lost at purchase, and it did not remove the Defect from their homes.

## IX. PLAINTIFF-SPECIFIC ALLEGATIONS

52. On or about March 9, 2026, Plaintiff purchased a Bodum Java French press with a glass carafe, from Bodum.com in New York, for about $21.66.

53. On or about March 9, 2026, Plaintiff purchased a Bodum Spare Beaker press with a glass carafe, from Bodum.com in New York, for about $16.25.

54. Had Plaintiff known at the time of purchase about the Defect, he would not have bought the recalled product or would have paid less for it.

55. Plaintiff received a recall notice from Bodum on or about October 29, 2026.

56. Nothing Plaintiff saw before purchasing disclosed that the carafe could break during ordinary use, that metal utensils could damage it in a way that leads to breakage, or that breakage could cause serious burns. Had Bodum disclosed those facts on the packaging or in its

[21] *Bodum USA Recalls Coffee Presses Sold Exclusively at Starbucks,* U.S. Consumer Prod. Safety Comm'n (Jan. 28, 2014) https://www.cpsc.gov/Recalls/2014/Bodum-USA-Recalls-Coffee-Presses-Sold-Exclusively-at-Starbucks (last visited November 3, 2026).

product listings, Plaintiff would have seen them and would not have bought the Recalled Press, or would have paid less for it.

57. Plaintiff used the Recalled Press as intended; to brew coffee at home, inclusive of all hallmarks associated with ordinary use.

58. Plaintiff suffered economic injury at purchase. Plaintiff paid for a safe French press and received one with the Defect, which was worth less than the price paid.

## X. TOLLING AND ESTOPPEL

59. Plaintiff and Class members could not reasonably have discovered the Defect before the recall. The Defect is latent, Bodum controlled the information about carafe breakage, and Bodum did not disclose the risk where consumers make buying decisions.

60. Any applicable limitations period is tolled by Bodum's knowing concealment of the Defect.

61. Bodum is estopped from relying on any statute of limitations because it had a continuing duty to disclose the Defect and, on information and belief, misrepresented the carafe's durability throughout the Class Period.

## XI. CLASS ALLEGATIONS

62. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of the following classes:

> **Nationwide Class:** All persons in the United States who purchased one or more Recalled Presses, other than for resale, from 1974 through October 29, 2026.
>
> **New York Subclass:** All members of the Nationwide Class who purchased a Recalled Press in New York.

63. The Nationwide Class and the subclass are together the "Class." The period from 1974 through October 29, 2026 is the "Class Period."

64. Excluded from the Class are Bodum and its parents, subsidiaries, affiliates, officers, and directors; persons who purchased Recalled Presses for resale; the judicial officers assigned to this case, their immediate families, and their staff; and persons who timely request exclusion. This action does not seek recovery for personal injury, and it does not adjudicate or release any Class member's personal-injury claim.

65. Plaintiff may propose modified definitions or additional subclass as discovery proceeds.

66. *Numerosity.* Bodum sold about 5.9 million Recalled Presses in the United States. The Class and each subclass have at least thousands of members, and joinder is impracticable.

67. *Ascertainability.* Class membership turns on objective criteria: whether a person bought a Recalled Press, and where, when, and from whom. Members can be identified through Bodum's and retailers' sales records, Bodum's recall and warranty records, receipts, and the Bodum markings on each press.

68. *Commonality.* The claims raise common questions whose answers will drive the resolution of this case, including:

(a) whether the Recalled Presses share the Defect;

(b) whether Bodum knew of the Defect, and when;

(c) whether Bodum's statements about the carafes' durability and heat resistance were misleading;

(d) whether Bodum failed to disclose material facts about the Defect, and whether it had a duty to disclose them;

(e) whether the Defect rendered the Recalled Presses unmerchantable;

(f) whether Bodum breached its express warranties;

(g) whether the recall remedy cures the Defect or compensates purchasers;

(h) whether Bodum's conduct violated N.Y. Gen. Bus. Law §§ 349 and 350;

(i) whether Bodum was unjustly enriched; and

(j) the proper measure of damages and the appropriate declaratory and injunctive relief.

69. *Typicality.* Plaintiff's claims are typical of the Class's claims. Plaintiff bought a Recalled Press with the same Defect, was exposed to the same omissions, was offered the same recall remedy, and suffered the same type of economic injury.

70. *Adequacy.* Plaintiff will fairly and adequately protect the Class's interests and has no interest antagonistic to theirs. Plaintiff has retained counsel experienced in consumer class actions and product-defect litigation.

71. *Predominance.* Common questions predominate over individual ones. The Defect is common to every Recalled Press. Bodum's representations, omissions, warranty terms, and recall remedy were uniform. Damages can be measured class-wide, including but not limited to, through the price premium attributable to the undisclosed Defect, the difference in value between the presses as represented and as delivered, or the cost of a replacement carafe.

72. *Superiority.* A class action is superior to individual suits. The Recalled Presses sold for about $15 to $65, so individual damages are small compared with the cost of litigating a product-defect case against Bodum. Class treatment avoids inconsistent results and conserves judicial resources. Plaintiff knows of no difficulty in managing this case as a class action.

73. *Rule 23(b)(2).* Bodum has acted on grounds that apply generally to the Class by selling the Recalled Presses with the Defect and by adopting a uniform recall remedy that does not cure it. Final injunctive and declaratory relief is appropriate for the Class as a whole.

74. *Rule 23(c)(4).* Alternatively, the Court may certify particular issues, including whether the Recalled Presses share the Defect, Bodum's knowledge, the materiality of the omitted facts, the adequacy of the recall remedy, and whether Bodum breached its warranties.

## XII. CAUSES OF ACTION

75. Each count below incorporates the allegations in the Factual Allegations, Defendant's Representations and Omissions, The Recall and Inadequate Recall Remedy, Plaintiff-Specific Allegations, Tolling and Estoppel, and Class Allegations sections (together, the "Common Allegations").

### COUNT I
**Violation of New York General Business Law § 349**
(On Behalf of Plaintiff and the New York Subclass)

76. Plaintiff incorporates the Common Allegations.

77. Section 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce in New York. N.Y. Gen. Bus. Law § 349(a).

78. Bodum's conduct was consumer-oriented. Bodum marketed and sold the Recalled Presses to consumers through standardized packaging, product listings, and retail channels, and its conduct affected New York consumers at large.

79. Bodum engaged in deceptive acts and practices by describing the carafes as durable and heat-resistant while omitting the Defect and the other facts identified under Defendant's Representations and Omissions. Bodum alone possessed the material information about the Defect, and consumers could not reasonably obtain it.

80. Bodum's acts and omissions were likely to mislead a reasonable consumer acting reasonably under the circumstances, and they were materially misleading.

81. Plaintiff and New York Subclass members bought their Recalled Presses in New York, and the deceptive transactions occurred here.

82. Plaintiff and New York Subclass members were injured. They paid a price premium for presses represented, expressly and by omission, as durable and safe for ordinary use, and they received presses with the Defect that were worth less.

83. Bodum acted willfully and knowingly. It knew of the Defect and continued to sell the Recalled Presses without disclosing it.

84. Plaintiff and New York Subclass members seek actual damages or $50 each, whichever is greater; treble damages up to $1,000 each for Bodum's willful and knowing violation; injunctive relief; and reasonable attorneys' fees. N.Y. Gen. Bus. Law § 349(h).

## COUNT II
**Violation of New York General Business Law § 350**
(On Behalf of Plaintiff and the New York Subclass)

85. Plaintiff incorporates the Common Allegations.

86. Section 350 prohibits false advertising in the conduct of any business, trade, or commerce in New York. False advertising includes labeling and other advertising that is misleading in a material respect, taking into account the extent to which it fails to reveal facts material in light of its representations. N.Y. Gen. Bus. Law §§ 350, 350-a(1).

87. Bodum's packaging, product listings, and other advertising for the Recalled Presses described the carafes as durable and heat-resistant and failed to reveal the Defect, which was material in light of those representations.

88. The advertising was misleading in a material respect and was disseminated to consumers in New York. Plaintiff reviewed the assertions on bodum.com prior to purchase and understood the representations on the packaging to mean the Recalled Presses were heat resistant.

89. Plaintiff and New York Subclass members were injured because they paid a price premium for presses advertised as durable and received presses with the Defect that were worth less.

90. Bodum acted willfully and knowingly.

91. Plaintiff and New York Subclass members seek actual damages or $500 each, whichever is greater; treble damages up to $10,000 each for Bodum's willful and knowing violation; injunctive relief; and reasonable attorneys' fees. N.Y. Gen. Bus. Law § 350-e(3).

## COUNT III
## Negligence
(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the New York Subclass)

92. Plaintiff incorporates the Common Allegations.

93. Bodum owed Plaintiff and Class members a duty to use reasonable care in designing or specifying, testing, inspecting, importing, marketing, labeling, and selling the Recalled Presses; in warning about known hazards; and, once it undertook the recall, in carrying it out.

94. Bodum breached that duty by:

(a) selling presses whose glass carafes are vulnerable to damage from ordinary metal contact and can break during use;

(b) using a filter assembly that, on information and belief, places metal against the glass during every use;

(c) failing to include a non-metal stirring tool with the presses;

(d) failing to warn consumers of the Defect on the packaging and in product listings;

(e) failing to act on reports of carafe breakage and burns; and

(f) adopting a recall remedy that leaves the Defect in place and does not replace potentially damaged carafes.

95. Bodum's duty to warn of a known danger continued after sale.

96. Bodum's breaches proximately caused Plaintiff's and Class members' damages. They paid for presses worth less than represented, must replace or stop using potentially damaged carafes, and face a continuing risk of injury from a product Bodum has not fixed.

97. The economic loss rule does not bar this claim. The Defect creates an unreasonable risk of serious personal injury, and Bodum's negligence in conducting the recall is independent of the contract of sale.

**COUNT IV**
**Design Defect (Strict Products Liability and Negligent Design)**
(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the New York Subclass)

98. Plaintiff incorporates the Common Allegations.

99. Bodum is in the business of importing, distributing, and selling French presses, and it placed the Recalled Presses into the stream of commerce.

100. The Recalled Presses were defectively designed when they left Bodum's control. They were not reasonably safe because the risks of their design outweighed its utility.

101. The risk is serious and foreseeable. A carafe that fractures while full of near-boiling water can cause severe burns, and Bodum has identified dozens of such incidents. Owners cannot reliably detect the damage that leads to failure, and stirring with a metal spoon is a foreseeable use.

102. Feasible, safer alternative designs existed, as alleged in the Factual Allegations, including designs Bodum itself sells. Those alternatives would have reduced the risk of injury without materially impairing the presses' utility or substantially increasing their cost.

103. Bodum knew or should have known of the risk and failed to exercise reasonable care in adopting and continuing to sell the design; it is liable in negligence and in strict liability.

104. The Defect was a substantial factor in causing Plaintiff's and Class members' damages, including the diminished value of the Recalled Presses and the cost of replacing or abandoning potentially damaged carafes.

## COUNT V
**Negligent Misrepresentation by Omission**
(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the New York Subclass)

105. Plaintiff incorporates the Common Allegations.

106. Bodum had a special relationship with Plaintiff and Class members that imposed a duty to provide accurate and complete information about the Recalled Presses. Bodum specified, imported, and marketed the Recalled Presses; held itself out as the North American market leader in the category; possessed unique and specialized knowledge of the carafes' vulnerability and of breakage reports that consumers could not obtain; and supplied product information for the specific purpose of inducing consumers to buy.

107. Bodum negligently supplied incomplete and misleading information by describing the carafes as durable and heat-resistant while failing to disclose the Defect and the other facts identified under Defendant's Representations and Omissions.

108. Bodum knew that consumers would rely on its product information when deciding whether to buy and what to pay.

109. Plaintiff and Class members reasonably relied on Bodum's incomplete information. Had Bodum disclosed the Defect, they would not have bought the Recalled Presses or would have paid less.

110. Plaintiff and Class members were damaged as a result.

**<u>COUNT VI</u>**
**Fraudulent Concealment**
(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the New York Subclass)

111. Plaintiff incorporates the Common Allegations.

112. Bodum concealed material facts about the Recalled Presses: the Defect and the other facts identified under Defendant's Representations and Omissions.

113. Bodum knew these facts before and throughout the Class Period. Its knowledge is shown by its own instructions cautioning against metal spoons, its chief executive's testimony in *Norman*, its acknowledgment in that case that the filter mesh contacts the glass at all times, its 2014 recall of glass Chambord presses for carafe breakage, the personal-injury suits alleging carafe fractures, and the breakage and burn reports it identified in the recall.

114. Bodum had a duty to disclose these facts because it possessed superior knowledge not reasonably available to consumers, because the Defect posed a safety risk, and because its statements about the carafes' durability and heat resistance were misleading half-truths without them.

115. Bodum concealed these facts intending to induce consumers to buy the Recalled Presses. On information and belief, Bodum did so to protect sales of a product line it had sold for decades.

116. Bodum's concealment is pleaded with particularity. *Who:* Bodum. *What:* the facts identified under Defendant's Representations and Omissions. *When:* throughout the Class Period, including when Plaintiff bought the product. *Where:* on the packaging, on Bodum.com, and in the product listings Bodum supplied to retailers, where Bodum could have disclosed the facts. *How:* Bodum described the carafes as durable and heat-resistant.

117. Plaintiff and Class members justifiably relied on Bodum's concealment. They would have seen a disclosure on the packaging or in the listings and would not have bought the Recalled Presses or would have paid less.

118. Plaintiff and Class members were damaged as a result. Bodum's conduct was knowing and showed a wanton disregard for consumer safety, warranting punitive damages.

**COUNT VII**
**Unjust Enrichment (Pleaded in the Alternative)**
(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the New York Subclass)

119. Plaintiff incorporates the Common Allegations.

120. Plaintiff pleads this count in the alternative to the contract and warranty counts, to the extent that no enforceable contract governs the subject matter or that Plaintiff and Class members lack an adequate remedy at law.

121. Bodum was enriched at Plaintiff's and Class members' expense. Bodum received revenue from the sale of the Recalled Presses, directly through Bodum.com and indirectly through retailers that bought the presses from Bodum for resale to consumers.

122. The relationship between Bodum and Class members is not too attenuated. Bodum branded, marketed, warranted, and recalled the Recalled Presses, and it directed its representations to the consumers who bought them.

123. Equity and good conscience require Bodum to make restitution. Bodum kept the revenue from presses with a Defect it knew about and did not disclose, and its recall returned nothing to purchasers.

124. Plaintiff and Class members seek restitution and disgorgement of the amounts by which Bodum was unjustly enriched.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, asks the Court to enter judgment against Bodum and to:

a. certify the Class, appoint Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

b. declare that Bodum is financially responsible for notifying the Class members of the pendency of this suit;

c. declare that Bodum's conduct violates the laws alleged and enter the declaratory relief requested above;

d. award actual, compensatory, and benefit-of-the-bargain damages;

e. award statutory damages under N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3), trebled as permitted;

f. order restitution and disgorgement;

g. award punitive damages on the fraudulent concealment claim;

h. award pre- and post-judgment interest;

i. award reasonable attorneys' fees, costs, and expenses, including under N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3); and

j. grant any other relief the Court finds just.

## XIII. JURY DEMAND

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial on all claims so triable.

Dated: November 13, 2026

Respectfully submitted,

By: */s/Charles D. Moore*

**REESE LLP**
Charles D. Moore
121 N. Washington Ave., 2nd Floor
Minneapolis, Minnesota 55401
Telephone: 212-643-0500
Email: *cmoore@reesellp.com*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

**LEVI & KORSINSKY, LLP**
Mark S. Reich (MR-4166)
Michael N. Pollack (6173272)
33 Whitehall, 27th Street
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7174
Email: mreich@zlk.com
Email: mpollack@zlk.com

*Attorneys for Plaintiff and the Proposed Class*